# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Consolidated Civil Action |
| | ) | No. 1:20-cv 00119-BAH |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |
| BREAD FOR THE CITY, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF AGRICULTURE et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## PRIVATE PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

Chinh Q. Le (D.C. Bar #1007037)
Jennifer F. Mezey (D.C. Bar #462724)*
Nicole Dooley (D.C. Bar #1601371)*
LEGAL AID SOCIETY OF THE
DISTRICT OF COLUMBIA
1331 H Street, N.W., #350
Washington, DC 20005
Phone: (202) 661-5979
Fax: (202) 727-2132

Daniel G. Jarcho (D.C. Bar #391837)
Kelley C. Barnaby (D.C. Bar #998757)
Raechel J. Bimmerle*
Jean E. Richmann*
Hilla Shimshoni (D.C. Bar #1033015)*
Kaelyne Y. Wietelman*
ALSTON & BIRD LLP
950 F Street, N.W.
Washington, DC  20004
Phone: (202) 239-3300
Fax: (202) 239-3333

*Attorneys for Plaintiffs Bread for the City, Damon Smith and Geneva Tann*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

ARGUMENT ..................................................................................................................... 1

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR
        CLAIMS. ............................................................................................................... 1

        A.      Plaintiffs Are Likely to Prove That USDA Exceeded Its Statutory
                Authority by Promulgating a Prospective Categorical Rule That
                Substantially Displaces the Waiver Adjudication Process Mandated by
                Statute. ................................................................................................... 1

                1.      The Statute's Waiver Provision Requires USDA to Render
                        Decisions on Waiver Applications Through Case-Specific
                        Adjudications. ............................................................................ 2

                2.      USDA's General Rulemaking Authority Did Not Authorize the
                        Agency to Displace the Adjudication Process with a Prospective
                        Categorical Rule. ....................................................................... 4

                3.      The Challenged Rule is Starkly Different Than Other Rules That
                        Merely Supplement an Adjudicatory Process. ............................. 5

                        a.      The Challenged Rule is Distinguishable from Supplemental
                                Rules Challenged in Cases Cited by Defendants. .......................... 5

                        b.      The Challenged Rule is Distinguishable from Supplemental
                                Rules That Limit Adjudication to Matters Contested by the
                                Parties. ......................................................................... 8

                4.      Defendants' Deference Argument Assumes the Erroneous Premise
                        That the Agency Had Statutory Authority to Displace Adjudication
                        with Rulemaking. .................................................................. 10

        B.      Plaintiffs Are Likely to Prove That the Final Rule Is Arbitrary and
                Capricious Because it Bases Waivers for the District of Columbia Upon
                Job Opportunities That Are Primarily Outside the District. ............................... 11

        C.      Plaintiffs Are Likely to Prove That USDA's Deeply Flawed Consideration
                of Public Comments Rendered the New Regulation Arbitrary and
                Capricious and Therefore Invalid. ......................................................... 13

II.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT A
        PRELIMINARY INJUNCTION. .............................................................................. 15

A.      Individuals Suffer Irreparable Injury When They Are Unlawfully
        Deprived of SNAP Benefits. ................................................................... 16

        1.      Defendants Concede That Foregoing Food Constitutes Irreparable
                Harm. .................................................................................................. 16

        2.      Defendants Concede That Individual Plaintiffs Will Be Unable to
                Avoid Loss of Their SNAP Benefits Through Participation in
                Extremely Limited Employment and Job Training Opportunities
                for ABAWDs in the District. .................................................................. 17

        3.      The Irreparable Harm the Individual Plaintiffs Will Suffer Is Not
                Self-Inflicted. ........................................................................................ 17

B.      Bread For The City Will Suffer Irreparable Harm Resulting from the
        Diversion of Its Resources Away from Provision of Holistic Services and
        Legislative Advocacy. ................................................................................. 21

III.    THE BALANCE OF THE EQUITIES WEIGHS IN PLAINTIFFS' FAVOR
        AND INJUNCTIVE RELIEF WILL NOT SUBSTANTIALLY HARM
        DEFENDANTS' INTERESTS. ........................................................................ 22

IV.     GRANTING A PRELIMINARY INJUNCTION WOULD ADVANCE THE
        PUBLIC INTEREST. ......................................................................................... 23

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abington Mem'l Hosp. v. Burwell*,
    216 F. Supp. 3d 110 (D.D.C. 2016) ........................................................................14

*Am. Iron & Steel Inst. v. EPA*,
    886 F.2d 390 (D.C. Cir. 1989) ..............................................................................14

*American Hosp. Ass'n v. NLRB*,
    499 U.S. 606 (1991) .............................................................................................6, 7

*Ariz. Pub. Serv. Co. v. EPA*,
    211 F.3d 1280 (D.C. Cir. 2000) ............................................................................14

*Bowen v. Yuckert*,
    482 U.S. 137 (1987) .................................................................................................9

*Briggs v. Bremby*,
    2012 U.S. Dist. LEXIS 172018 (D. Conn. Dec. 4, 2012) .....................................23

*British Caledonian Airways, Ltd. v. CAB*,
    584 F.2d 982 (D.C. Cir. 1978) ................................................................................3

*Chevron U.S.A. Inc. v. NRDC, Inc.*,
    467 U.S. 837 (1984) ...............................................................................................11

*Cigar Ass'n of America v. FDA*,
    323 F.R.D. 54 (D.D.C. 2017) ..........................................................................21, 22

*E.B. v. United States Dep't of State*,
    2019 U.S. Dist. LEXIS 191165 (D.D.C. Nov. 4, 2019) ........................................19

*Fish v. Kobach*,
    840 F.3d 710 (10th Cir. 2016) ...............................................................................18

*Garnett v. Zeilinger*,
313 F. Supp. 3d 147 (D.D.C. 2018) ..................................................................16, 17

*Heckler v. Campbell*,
    461 U.S. 458 (1983) ......................................................................................5, 6, 7, 8

*Ind. State Conf. of the NAACP v. Lawson*,
    326 F. Supp. 3d 646 (S.D. Ind. 2018) ...................................................................22

*Kaufman v. Nielsen*,
   896 F.3d 475 (D.C. Cir. 2018) ............................................................................10, 11

*Kinetic Concepts, Inc. v. ConvaTec, Inc.*,
   2010 U.S. Dist. LEXIS 40240 (M.D.N.C. Apr. 23, 2010) ........................................15

*Kissi v. Panzer*,
   664 F. Supp. 2d 120 (D.D.C. 2009) ..................................................................15, 17

*League of Women Voters of the United States v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) .....................................................................................24

*Lopez v. Heckler*,
   713 F.2d 1432 (9th Cir. 1983) ..................................................................................23

*Maryland v. King*,
   567 U.S. 1301 (2012)................................................................................................22

*Mason v. Geithner*,
   811 F. Supp. 128 (D.D.C. 2011) ..............................................................................17

*Meese v. Keene*,
   481 U.S. 465 (1987)..................................................................................................19

*Michigan v. EPA*,
   268 F.3d 1075 (D.C. Cir. 2001) .................................................................................3

*Mylan Labs., Inc. v. Thompson*,
   389 F.3d 1272 (D.C. Cir. 2004) ...............................................................................11

*New York v. EPA*,
   413 F.3d 3 (D.C. Cir. 2005) (per curiam) ...............................................................14

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*,
   416 U.S. 267 (1974)....................................................................................................3

*NLRB v. Wyman*,
   394 U.S. 759 (1969) (opinion of Fortas, J.) ..............................................................3

*Open Cmtys. All. v. Carson*,
   286 F. Supp. 3d 148 (D.D.C. 2017) ..............................................................21, 22, 24

*Prime Time Int'l Co. v. Vilsack*,
   930 F. Supp. 2d 240 (D.D.C. 2013) ..........................................................................11

*Pursuing Am.'s Greatness v. FEC*,
   831 F.3d 500, 511-12 (D.C. Cir. 2016).....................................................................24

*R.I.L-R v. Johnson,*
    80 F. Supp. 3d 164 (D.D.C. 2015) ......................................................................24

*SEC v. Chenery Corp.,*
    332 U.S. 194 (1947) ..............................................................................................3

*Stamm v. New York City Transit Auth.,*
    2011 U.S. Dist. LEXIS 36195 (E.D.N.Y. Mar. 30, 2011) ....................................20

*\*Sullivan v. Zebley,*
    493 U.S. 521 (1990) ...............................................................................4, 5, 9, 10

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ............................................................................................11

*United States v. Storer Broadcasting Co.,*
    351 U.S. 192 (1956) .......................................................................................6, 7, 8

*Wyoming Outdoor Council v. United States Forest Service,*
    165 F.3d 43 (D.C. Cir. 1999) .............................................................................19

## STATUTES

7 U.S.C. § 2011 ...........................................................................................................23

7 U.S.C. § 2013(c) ...............................................................................................3, 4, 9

7 U.S.C. § 2015(o)(3)(B) ...........................................................................................17

7 U.S.C. § 2015(o)(4) ...................................................................................2, 3, 4, 12

42 U.S.C. § 12112(a) ..................................................................................................20

## OTHER AUTHORITIES

7 C.F.R. § 273.24(c)(2)(iii) ........................................................................................19

7 C.F.R. § 273.24(f)(2) .................................................................................................9

7 C.F.R. § 273.24(f)(3)(i)–(3)(iii) ...............................................................................8

7 C.F.R.§ 273.24(f)(4)(ii) ...........................................................................................12

84 Fed. Reg. 980 (Feb. 1, 2019) .............................................................................7, 14

84 Fed. Reg. 66,782 (Dec. 5, 2019) .................................................................. passim

11A C, Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1
    (3d ed) ................................................................................................................18

Defendants' Opposition studiously avoids core issues for which Defendants have no answer. On the merits, Defendants sidestep Plaintiffs' construction of the statutory language and dodge precedents, analyzed by Plaintiffs, that wholly undermine many of Defendants' primary arguments. Defendants seek to change the subject from the well-established principles that making individuals forego food, and forcing an organization to divert its essential resources, constitute irreparable harm. And Defendants' arguments concerning the other preliminary-injunction factors hinge entirely on the assumption that Defendants would prevail on the merits, notwithstanding their silence regarding most of Plaintiffs' merits analysis. For these and other reasons set forth below, the Court should grant Plaintiffs' motion for preliminary injunction.[1]

## ARGUMENT

I. **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.**

   A. **Plaintiffs Are Likely to Prove That USDA Exceeded Its Statutory Authority by Promulgating a Prospective Categorical Rule That Substantially Displaces the Waiver Adjudication Process Mandated by Statute.**

Defendants concede that under the new regulation, USDA would (1) predetermine the outcome of States' waiver applications through a prospective categorical rule and (2) relegate case-specific waiver adjudications to rare situations involving "extraordinary circumstances" or anomalous geographic areas (Indian Reservations and U.S. Territories). *Compare* Pl. Br. at 13 *with* Opp. Br. at 11-13. With minimal exceptions, USDA's review of a waiver application would not involve any substantive agency decision regarding the sufficiency of jobs for ABAWDs in a specific geographic area. To the contrary, the new rule would automatically predetermine the end

---

[1] In this Reply, references to Plaintiffs are to the private Plaintiffs Bread for the City, Damon Smith and Geneva Tann. In most respects, the private Plaintiffs' arguments do not overlap with the arguments of the State Plaintiffs in this consolidated proceeding. The private Plaintiffs' failure to address the State Plaintiffs' arguments here does not constitute a waiver of those arguments, which the private Plaintiffs support.

result of a waiver application once the State applicant identified the pertinent LMA.  At most, the reviewer of the application would need to double-check the (publicly-available) U-3 unemployment rate information for the identified LMA.  If the LMA's unemployment rate fell below the level specified in the "core standard," the reviewer would automatically deny the application, through a wholly ministerial action.

Defendants do not dispute that USDA would automatically deny waivers this way, even if an applicant could prove a lack of sufficient jobs relying upon other evidence that USDA has accepted as sufficient for more than two decades.  That contradicts the process established by Congress.  The governing statute assured the opportunity for an individualized determination for each application.  Because the challenged rule eviscerates that assurance, Plaintiffs are likely to prevail on their claim that USDA lacked statutory authority to issue the new rule.

      1.      **The Statute's Waiver Provision Requires USDA to Render Decisions on Waiver Applications Through Case-Specific Adjudications.**

Plaintiffs' opening brief demonstrated that:

- the plain language of 7 U.S.C. § 2015(o)(4) requires a case-specific, individualized determination of the employment opportunities of particular "individuals" in "the area in which the individuals reside" (Pl. Br. at 11-12);

- these individualized determinations fall easily within the definition of informal "adjudication" (Pl. Br. at 22-23);

- under the foundational principles of the Administrative Procedure Act, adjudication and rulemaking are mutually exclusive means of regulating (Pl. Br. at 10-11); and

- because section 2015(o)(4) requires adjudication, that provision could not have authorized the prospective categorical rule challenged here. (Pl. Br. at 22-23).

Defendants do not proffer an alternative construction of the terms of the statute. Defendants also do not deny that waiver determinations authorized by section 2015(o)(4) fall within the definition of "adjudication," or that adjudication and rulemaking are mutually exclusive means of regulating.  And Defendants do not explain how a statutory provision requiring

adjudication could authorize the polar opposite of adjudication (i.e., rulemaking).   Instead, Defendants cite boilerplate case law holding that an agency generally has discretion to choose between rulemaking and adjudication.  Opp. Br. at 27.  But it is obvious that USDA did not have such discretion here.

Defendants completely ignore binding precedent, cited in Plaintiffs' opening brief, holding that an agency does *not* have discretion to choose between rulemaking and adjudication when Congress specifies which of the two processes to use.  Pl. Br. at 22 (citing *Michigan v. EPA*, 268 F.3d 1075, 1087 (D.C. Cir. 2001)).  Cases cited by Defendants are inapposite.  Those cases rely fundamentally upon *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), which is the seminal case underlying Defendants' discretion argument.  *See NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 292-93 (1974) (citing *Chenery*); *British Caledonian Airways, Ltd. v. CAB*, 584 F.2d 982, 993 n.22 (D.C. Cir. 1978) (citing *Chenery*); Opp. Br. at 27.  The D.C. Circuit has made clear that *Chenery* discretion does not apply when Congress has directed the agency which process to follow.  *Michigan*, 268 F.3d at 1087 (discussing *Chenery*).  Here Congress has specified that USDA must "determin[e]" waivers through case-by-case adjudication.  7 U.S.C. § 2015(o)(4).  The agency has no discretion to displace that adjudicatory process with rulemaking.  *Cf. NLRB v. Wyman*, 394 U.S. 759, 764 (1969) (opinion of Fortas, J.) ("There is no warrant in law for the Board to replace the statutory scheme"—requiring an "adjudicatory proceeding"—with "a rule-making procedure of its own invention.").

Given the force of the foregoing analysis, Defendants do not seriously argue that section 2015(o)(4) gave USDA authority to issue the challenged rule.  Defendants instead cite to USDA's general rulemaking authority under 7 U.S.C. § 2013(c).  Opp. Br. at 27.  We explain below why section 2013(c) also did not empower USDA to issue the challenged rule.

### 2. USDA's General Rulemaking Authority Did Not Authorize the Agency to Displace the Adjudication Process with a Prospective Categorical Rule.

Plaintiffs' opening brief demonstrated that the SNAP statute's general rulemaking provision (section 2013(c)) does not authorize USDA to displace the section 2015(o)(4) adjudicatory process with a prospective categorical rule. Section 2013(c) only empowers the agency to issue a rule "consistent with" the adjudicatory process. Section 2013(c) did not authorize USDA to issue this rule, because it conflicts with, and displaces, the adjudicatory process. Pl. Br. at 23 (quoting 7 U.S.C. § 2013(c))).

Defendants miss the mark when they attempt to distinguish *Sullivan v. Zebley*, 493 U.S. 521 (1990), which strongly supports Plaintiffs' statutory-authority claim. *Compare* Opp. Br. at 28-29 *with* Pl. Br. at 24. *Sullivan* was a "facial challenge to the method" that the agency used to determine whether a child was disabled and therefore entitled to disability benefits. 493 U.S. at 523. As in this case, the challenged "method" was rulemaking. The agency had promulgated a prospective categorical rule listing the specific illnesses, medical signs, symptoms, and laboratory results that would qualify a child for benefits. *Id*. at 529-30. But (as in this case) the underlying statute required the agency to determine entitlement to benefits through an adjudication (characterized as an "individualized, functional inquiry"). *Id*. at 528. The rule's "fixed, finite set of medical criteria" could not possibly satisfy the statutory requirement for an individualized determination, which would address "the infinite variety of medical conditions and combinations thereof, the varying impact of such conditions due to the claimant's individual characteristics, and the constant evolution of medical diagnostic techniques." *Id*. at 539. The agency had effectively tried to drive a square peg (rulemaking) into a round hole (adjudication). Although the agency had broad general rulemaking authority (*id*. at 525 n.2), the Supreme Court held that the agency "exceed[ed] [its] statutory authority" in issuing the rule. *Id*. at 541.

Attempting to distinguish *Sullivan*, Defendants focus on the fact that the Supreme Court's statutory construction turned in part on a comparison of the disability standards for adults and children. The specific considerations underlying the *Sullivan* statutory construction are irrelevant here. What matters for this case is the bottom-line *conclusion* of that statutory construction: that the statute required an individualized adjudication of each child's disability, and that general rulemaking authority did not empower the agency to regulate through rulemaking instead. This mismatch between the statute's individualized adjudication requirement and the agency's inflexible, uniform rule drove the result in *Sullivan*. Plaintiffs are likely to succeed on the merits here for the same reason; there is a directly analogous mismatch between the SNAP statue's adjudication requirement and USDA's decision to predetermine the result of waiver applications by rule.

### 3.    The Challenged Rule is Starkly Different Than Other Rules That Merely Supplement an Adjudicatory Process.

#### a.    The Challenged Rule is Distinguishable from Supplemental Rules Challenged in Cases Cited by Defendants.

Plaintiffs' opening brief discussed why the challenged rule is starkly different than other rules that merely supplement an adjudicative process without displacing it. Such supplemental rules enhance an adjudicative process—by uniformly disposing of certain types of repetitive issues for which the outcome should not vary from case to case—instead of displacing an adjudicative process (like the challenged rule). Plaintiffs cited the primary precedent validating such a supplemental rule (*Heckler v. Campbell*, 461 U.S. 458 (1983)) and explained four grounds for distinguishing that rule from the USDA rule challenged here. Pl. Br. at 24-25 n.36.

Defendants cite *Heckler* but do not even acknowledge (much less respond to) Plaintiffs' grounds for distinguishing the case. Defendants cite other similarly distinguishable cases as well, in a boilerplate discussion that does not mention Plaintiffs' analysis. Defendants' silence as to

these distinctions is quite telling.  If Defendants could explain why these cases apply here they would have done so.

The following chart provides more detail on this issue, documenting six material distinctions between the rules at issue in the Defendants' cited cases and the USDA rule challenged here:

| SUPPLEMENTAL RULES CHALLENGED IN CASES CITED BY DEFENDANTS | RULE CHALLENGED IN THIS CASE |
|---|---|
| Rule uniformly addresses a general factual issue that does not vary from case to case.[2] | Rule uniformly addresses location-specific factual issues that do vary from case to case.[3] |
| Rule does not determine the end result of the agency's decision-making process.  Rule only addresses a single issue, while the agency uses adjudication to address other material issues in making the final decision.[4] | Rule determines the end result of the agency's decision-making process.[5] |

---

[2] *Heckler*, 461 U.S. at 468 (rule itemizing types and numbers of jobs that exist in the national economy addressed a "general factual issue" that "is not unique to each claimant"); *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 618 (1991) (collective bargaining rule applying uniformly to acute care hospitals rested on the agency's "considered judgment that 'acute care hospitals do not differ in substantial, significant ways . . . .'") (citation omitted); *id*. at 619 (agency justified uniform treatment of acute care hospitals "by detailing the factors that supported generalizations"); *United States v. Storer Broadcasting Co.*, 351 U.S. 192, 193 (1956) (rule limiting the number of broadcasting stations that could be owned by an applicant for a broadcast license rested on general concerns about "overconcentration of broadcasting facilities" that were not specific to particular applicants).

[3] *See, e.g.*, Pl. Br. at 28 n.38 (contrasting unemployment rates in the District's Ward 7, Ward 8, and the interstate LMA that includes the District).

[4] *Heckler*, 461 U.S. at 460-61, 467 (agency's disability-benefits determination rested on a two-step decision in which the first step required a "determination of historic facts" through "findings on the basis of evidence adduced at a hearing" and the challenged rule addressed only the second step of the decision); *American Hosp. Ass'n*, 499 U.S. at 613 (explaining that the agency must adjudicate "a host of other issues" separate and apart from the specific collective-bargaining issue addressed by the rule).

[5] Pl. Br. at 13.

| SUPPLEMENTAL RULES CHALLENGED IN CASES CITED BY DEFENDANTS | RULE CHALLENGED IN THIS CASE |
| --- | --- |
| Rule applies to only a small subset of parties governed by the pertinent statutory provision. The agency regulates the majority of parties through individualized adjudication.[6] | Rule applies to all parties governed by the pertinent statutory provision and forecloses individualized adjudication in all but exceptional circumstances.[7] |
| Rule promotes efficiency without sacrificing fairness, because it addresses an issue that will not vary from case to case. Continuously re-adjudicating the issue would be needless effort that would benefit no one.[8] | Rule uses a uniform standard to address an issue that will vary from case to case. Agency will—and intends to—reach different results under the rule than it would if it adjudicated waiver applications individually.[9] |
| Rule implements express congressional intent for the agency to use rulemaking to regulate the specific subject matter at issue.[10] | There are no indicia of congressional intent for the agency to use rulemaking to regulate the specific subject matter at issue. |

[6] *American Hosp. Ass'n*, 499 U.S. at 608 (rule applied only to collective bargaining units for acute care hospitals, whereas the agency otherwise regulated collective bargaining units for all other "line[s] of commerce" through adjudication; *see also id.* at 618 (noting that the rule "does not apply to many facilities, such as nursing homes, blood banks, and outpatient clinics"); *Storer*, 351 U.S. at 193, 202 (rule applied only to broadcast license applicants that had an ownership interest in a specified number of other stations, whereas the agency accorded most applicants a "full hearing" giving "every party . . . the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts").

[7] Pl. Br. at 13-21.

[8] *Heckler*, 461 U.S. at 468 (rule addressed a "general factual issue [that] may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing"); *id.* ("To require the Secretary to relitigate" the general factual issue "at each hearing would hinder needlessly an already overburdened agency"); *Storer*, 351 U.S. at 205 (rule prevented "wast[ing] time on applications that do not state a valid basis for a hearing"); *id.* at 202 (rule was promulgated to facilitate "orderly conduct of [the agency's] business").

[9] 84 Fed. Reg. 980, 981 (Feb. 1, 2019) (USDA intends new rule to "ensure that the waivers are applied on a more limited basis"); 84 Fed. Reg. 66,782, 66,807 (Dec. 5, 2019) (new rule would cause approximately 77 percent of counties to lose waiver, resulting in the loss of benefits by 688,000 individuals).

[10] *Heckler*, 461 U.S. at 466 (rule addressing criteria for proving disability, promulgated under the agency's statutory authority to "'regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same' in disability cases") (citation omitted); *American Hosp. Ass'n*, 499 U.S. at 617 (rule addressing acute-care hospitals, promulgated under statute with legislative history stating that if the agency "did not give appropriate consideration" to issues specific to such hospitals "Congress might respond with a legislative remedy"); *see also id.* at 610, 613 (holding that applicable statutory language did not require adjudication of the acute-care hospital issue addressed by the rule); *Storer*, 351 U.S. at 202 & n.11 (stating that broadcast-licensing rule allowed the agency to "deny[ ] a license to operate a station in ways contrary to

| SUPPLEMENTAL RULES CHALLENGED IN CASES CITED BY DEFENDANTS | RULE CHALLENGED IN THIS CASE |
|---|---|
| Rule gives regulated parties a broad opportunity to obtain an exception to the rule (and have individualized adjudication instead) by demonstrating that the agency should not apply the rule to them.[11] | Rule gives regulated parties a strictly limited opportunity to obtain an exception to the rule (and have individualized adjudication instead) by demonstrating that the agency should not apply the rule to them.[12] |

      **b.**      **The Challenged Rule is Distinguishable from Supplemental Rules That Limit Adjudication to Matters Contested by the Parties.**

The challenged rule also is distinguishable from supplemental rules that authorize statutorily-required adjudication but *limit* the adjudicatory process to matters *contested* by the parties. This type of supplemental rule identifies one or more categories of claimants for which the agency *concedes* the right to relief (and effectively grants the relief automatically, without the need for adjudication). Neither party is prejudiced by such rules, which enhance the efficiency of the adjudicatory process by summarily disposing of cases presenting no actual controversy. That permits the agency to focus on adjudicating other cases in which an actual controversy does exist.

A significant example is the current version of USDA's waiver rule, which defines categories of applications that the agency will not contest (and will automatically grant). 7 C.F.R. § 273.24(f)(3)(i)–(3)(iii). It is fundamentally important that the current rule also provides for individualized adjudication of waiver applications that do not meet the automatic-qualification

---

those that the Congress has determined are in the public interest" and citing other statutory provisions to evidence that congressional determination).

[11] *Heckler*, 461 U.S. at 467 (rule "afford[ed] claimants ample opportunity both to present evidence relating to their own abilities and to offer evidence that the guidelines do not apply to them"); *Storer*, 351 U.S. at 201 & n.10 (regulated party could obtain waiver of, or exception to, rule by "show[ing] the nature of the waiver or exception desired and set forth the reasons in support thereof"); *see also Heckler,* 461 U.S. at 467 n.11 (stating that *Storer* was "careful to note that the statutory scheme at issue allowed an individual applicant to show that the rule promulgated should not be applied to him") (citing *Storer*, 351 U.S. at 205.).

[12] Pl. Br. at 13-14 n.14.

standards.  *See id*. § 273.24(f)(2) (explaining that "[t]he State agency may submit whatever data it deems appropriate to support its request" and providing a "non-exhaustive list" of suggested "kinds of data" for the State to consider submitting).  That process satisfies the congressional mandate that USDA must exercise its general rulemaking authority in a manner "consistent with" the rest of the statute (7 U.S.C. § 2013(c)), including the statutory requirement that applicants must have the opportunity for individualized determinations of their waiver applications.

It is critical here that the types of rules described above are *not* permissible if they *limit* relief to uncontested cases, without providing for adjudication of cases presenting actual controversies.  A compelling example is the unlawful rule at issue in *Sullivan v. Zebley*.  That rule identified categories of disability claims for which the claimant "qualifies for benefits without further inquiry."  *Sullivan*, 493 U.S. at 525.  The rule "'streamline[d] the decision process by identifying those claimants whose medical impairments'" plainly justified disability benefits.  *Id*. at 532 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).  However, the rule was fatally defective because of the way it treated claimants that did *not* satisfy the automatic-qualification standard.  Such claimants were "simply denied benefits," even if they could otherwise prove, in an individualized adjudication, that they satisfied the applicable statutory standard.  *Id*. at 535-36; *see also id*. at 526 (rule allowed "no further inquiry" past the automatic-qualification standard).  The rule was unlawful, because it deprived such claimants of an individualized determination that the statute required, in which they should have had an opportunity to prove that they were entitled to benefits.  *Id*. at 539-41.

There is a striking parallel between the rule challenged in *Sullivan* and the new USDA rule challenged here.  The new rule's "core standards" define a category of applications that USDA will automatically grant, because the agency does not contest that the waivers are justified.  The

new rule is fatally defective, because it *also* deletes the current rule's entitlement to an individualized adjudication of applications that are *not* automatically granted.  Under the new rule, USDA will automatically grant applications that comply with the core standards but also will automatically *deny* waiver applications that do *not* meet the same standards.  As in *Sullivan*, such denials will occur even when the parties actively dispute the right to a waiver, without permitting an individualized adjudication (in which the applicant could prove a lack of "sufficient" jobs for the ABAWD population).  Accordingly, as in *Sullivan*, the rule challenged here is unlawful.[13]

4.      **Defendants' Deference Argument Assumes the Erroneous Premise That the Agency Had Statutory Authority to Displace Adjudication with Rulemaking.**

The Court also should reject Defendants' argument that the substantive provisions of the new rule are entitled to *Chevron* deference.  Opp. Br. at 17-18, 23-24.  That argument assumes the erroneous premise that the agency had statutory authority to displace adjudication with rulemaking in the first place.  Because USDA did not, the Court should vacate the rule on that ground, and there is no basis for even reaching the deference issue.

Vacating the rule would not (as Defendants assert) improperly restrict whatever discretionary authority USDA may have to interpret and administer the statute.  If USDA determines waiver applications through informal adjudication as it should, the agency will exercise its proper authority to interpret the statute in that context.  *Kaufman v. Nielsen*, 896 F.3d 475, 484

---

[13] Defendants note that many applicants have automatically qualified for waivers under the current version of the rule (and therefore have not needed to invoke their rights to individualized adjudications in the past).  Opp. Br. at 40.  That does not diminish the significance of the adjudication requirement.  The current rule's automatic-qualification standards are less strict than those in the new rule.  Accordingly, in the past, many applicants have automatically qualified for waivers without needing to invoke their adjudication rights.  The new rule's highly restrictive automatic-qualification (core) standards make the right to an individualized adjudication paramount for applicants that do not meet those standards.

(D.C. Cir. 2018) (describing statutory interpretation in informal adjudication).  USDA also will be able to lay its claim to *Chevron* deference if it regulates through informal adjudication as the statute requires (though the claim would likely fail).  *Compare Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272, 1280 (D.C. Cir. 2004) (applying *Chevron* deference in informal adjudication) *with Kaufman,* 896 F.3d at 485 (refusing to apply *Chevron* deference in informal adjudication).[14]  However, it is premature to address these deference issues now, because USDA has unlawfully displaced the adjudicatory process.  At this juncture, the Court should conclude that Plaintiffs are likely to prevail on the merits of their statutory authority claim.

     **B.**     **Plaintiffs Are Likely to Prove That the Final Rule Is Arbitrary and Capricious Because it Bases Waivers for the District of Columbia Upon Job Opportunities That Are Primarily Outside the District.**

     Plaintiffs also are likely to prove that the new final rule is arbitrary and capricious, because it bases waivers for the District of Columbia upon job opportunities that are primarily outside the District.  Defendants do not dispute that the rule virtually guarantees that waivers for District residents will be based overwhelmingly upon job opportunities outside the District, because 85% of the pertinent LMA's labor force lives in Maryland, Virginia or West Virginia.  Pl. Br. at 27-28.  Defendants also do not dispute that the territory of the LMA reaches far outside the District, or that using such a huge area for waiver determinations skews the considered unemployment rate downward, so that it is not an accurate representation of unemployment *within* the District.  *Id.* at

---

[14] It is very unlikely that *Chevron* deference would apply to a USDA ruling on a waiver application.  *See Chevron U.S.A. Inc. v. NRDC, Inc.,* 467 U.S. 837 (1984).  That type of informal adjudicatory ruling likely lacks the formality even to be considered under the two-part *Chevron* test.  *See, e.g*., *United States v. Mead Corp*., 533 U.S. 218 (2001).  The courts often use the term *Chevron* "step zero" to refer to a determination that the *Chevron* analytical construct does not apply at all to an agency decision.  *See, e.g*., *Prime Time Int'l Co. v. Vilsack*, 930 F. Supp. 2d 240, 248 (D.D.C. 2013).  If the agency decision does not pass step zero, the court does not even reach the question whether deference is due on the ground that the statute is ambiguous.  Rulings from informal adjudications of waiver applications likely would not pass step zero.

28.  Defendants make biting claims that the States' choices of "areas" allegedly have failed to match true economic conditions.  But the agency has not practiced what it preaches.  The interstate LMA that incorporates the District is far too large to fairly represent the job opportunities for ABAWDs living in the District.  Furthermore, Defendants do not explain how such a far-flung area could possibly meet the statute's language, as an "area in which [District of Columbia] individuals reside."  7 U.S.C. § 2015(o)(4)(A); Pl. Br. at 30.

To make matters worse, this mismatch between the waiver area and job opportunities arises from a specific provision in the challenged rule (applicable only to the District) for which the agency has no specific justification.  The text of the rule itself recognizes that the District is "entirely within one interstate LMA," and USDA was, or should have been, aware that no other interstate LMAs entirely encompass a "State."  *See* 7 C.F.R.§ 273.24(f)(4)(ii) (published in 84 Fed. Reg. 66,782 at 66,811).  To tailor a rule uniquely to the District, the agency should have had a tailored justification.  But it did not.  Defendants do not deny that the agency issued the rule without any information concerning the ability of ABAWDs to travel within this large area to seek job opportunities outside the District.  Pl. Br. at 30.

More generally, Defendants do justify using LMAs to define waiver areas, on the ground that they "are economically integrated [areas] . . . within which individuals can reside and find employment within a reasonable distance or can readily change jobs without changing their place of residence."  Opp. Br. at 13.  But the "individuals" around which LMAs are structured are, statistically, *median* residents.[15]  Defendants do not, and cannot, justify using the commuting experience of median residents as a yardstick for ABAWDs.  To the contrary, Defendants tacitly concede that ABAWDs (including Mr. Smith and Ms. Tann) confront huge transportation hurdles

---

[15] Ex. A to Pl. Br. at 105.

not faced by ordinary citizens and cannot commute any significant distance for a job.  Pl. Br. at 30-31 & n.40.

USDA's reliance on LMAs also is arbitrary and capricious, because it contradicts the agency's primary objective of ensuring that waivers "reflect current economic conditions," including very recent "low unemployment levels across the majority of the country."  84 Fed. Reg. at 66,792, 66,783.  LMAs are based upon data that are at least a decade old.  The Bureau of Labor Statistics explains that "[t]he current small LMAs are based on commutation data from the American Community Survey 5-year dataset for *2006-10* [ . . . ]" (emphasis added).[16]

Finally, Defendants concede that LMAs are flawed but justifies using them on the ground that they are the "best available," because they are federal designations of economically integrated areas, and there is no "federal delineation" of commuting factors and other related economic issues for ABAWDs.  Opp. Br. at 37.  The statute does not require the agency to use a federally-uniform measure for waiver.  Even Defendants argue that the statute requires the agency to base ABAWD job opportunities on a "reasonable" area (Opp. Br. at 21)—which the LMA that encompasses the District is not.  Where, as here, the "best" federally-uniform standard is arbitrary and capricious, the agency must regulate through other means, such as the historic practice of having States define "areas" based upon their intimate knowledge of local economic conditions.

## C.     Plaintiffs Are Likely to Prove That USDA's Deeply Flawed Consideration of Public Comments Rendered the New Regulation Arbitrary and Capricious and Therefore Invalid.

Plaintiffs' opening brief sets forth three examples of significant comments for which the agency gave wholly conclusory responses.  Defendants do not deny that they are conclusory and

---

[16] Ex. A to Pl. Br. at 106.

simply state that "USDA considered and responded" to each of the comments noted.  Opp. Br. at

53.  That tepid rebuttal corroborates the deficiencies in the agency's responses.[17]

*First*, Plaintiffs established that USDA made conclusory statements in response to

comments arguing that Congress intended for "insufficient jobs" to be an independent waiver

criterion that did not rely upon an unemployment rate.  Defendants respond by referring to a page

in the preamble in which USDA merely states that it has authority to define the term.  Opp. Br. at

53 (citing 84 Fed. Reg. 66,782 at 66,788).  The agency proffers no explanation for *why* "sufficient

jobs" should turn exclusively on an unemployment rate when Congress independently established

an unemployment-rate criterion (of over 10 percent) in a different subsection of the statute.

*Second*, Plaintiffs explained that USDA did not answer comments regarding Congress's

decision not to include a 7% unemployment floor—as passed by the House—in the 2018 Farm

Bill.  Defendants respond by referring to a page in the preamble in which USDA addresses facets

of the Farm Bill wholly unrelated to that unemployment floor.  Opp. Br. at 53 (citing 84 Fed. Reg.

66,782 at 66,794).  That cannot possibly be a sufficient response to the comment.

---

[17] Plaintiffs' opening brief also explained that USDA's rulemaking process involved inadequate notice of its decision, in the final rule, to preclude consideration of extended unemployment benefits in waiver determinations. Pl. Br. at 16 n.16.  The proposed rule unequivocally stated that USDA would continue to determine waivers based on extended unemployment benefits. 84 Fed. Reg. at 985. Defendants argue that USDA did give adequate notice and cite caselaw that supports the proposition that when the agency "proposes" a rule, a party can reasonably assume that the proposal will not be adopted. That was not the case here, and Defendants' argument is belied by their own parentheticals. In each of Defendants' cited cases, the agency decided not to adopt *a new proposal*—not to reject the status quo (as USDA did here). *See, e.g., New York v. EPA,* 413 F.3d 3, 44 (D.C. Cir. 2005) (per curiam) ("One logical outgrowth of a *proposal* is surely . . . to refrain from taking the *proposed step*." (quoting *Am. Iron & Steel Inst. v. EPA*, 886 F.2d 390, 400 (D.C. Cir. 1989)); *Ariz. Pub. Serv. Co. v. EPA*, 211 F.3d 1280, 1299-1300 (D.C. Cir. 2000) (final rule's removal *of proposed requirement* permissible because "any reasonable party should have understood that EPA might reach the opposite conclusion after considering public comments"); *see also Abington Mem'l Hosp. v. Burwell,* 216 F. Supp. 3d 110, 131-32 (D.D.C. 2016) (use of terms like "revise"  and "changes" adequately notified public agency was *considering broad changes* implemented in final rule) (emphasis added).

*Finally*, USDA failed to respond adequately to comments regarding the shortfalls of unemployment rates as a measure of ABAWD job opportunities.  As Plaintiffs established in their opening brief, ABAWDs face substantial job barriers not reflected in unemployment rates (including criminal history, lower educational attainment, and inadequate transportation).  USDA acknowledged the problem, conceding that "ABAWDs may face barriers to employment and have more limited employment prospects than the general public due to low educational attainment or other factors . . . ." 84 Fed. Reg. at 66,787.  But USDA did not explain why its unemployment-rate standard is nevertheless an adequate measure of ABAWD job opportunities.  USDA simply asserted that its standard was necessary to "accurately reflect a lack of sufficient jobs in a given area." *Id.* That conclusory response to this critical issue renders the rule arbitrary and capricious.

## II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION.

Defendants all but concede that Plaintiffs are entitled to a preliminary injunction if they prove a likelihood of success on the merits.  Defendants mischaracterize (or ignore) the bulk of Plaintiffs' arguments on irreparable harm.  To the extent that Defendants fail to address Plaintiffs' arguments, this Court should treat them as conceded.  *Kissi v. Panzer*, 664 F. Supp. 2d 120, 123 (D.D.C. 2009) ("Because the plaintiff's opposition fails to address the defendants' arguments, the Court may treat the defendants' motion as conceded."); *see also Kinetic Concepts, Inc. v. ConvaTec, Inc*., 2010 U.S. Dist. LEXIS 40240, 31-32 (M.D.N.C. Apr. 23, 2010)("[A] party who fails to address an issue has conceded the issue.").  Based on Plaintiffs' arguments and Defendants' concessions, the Court should conclude that Plaintiffs will suffer irreparable harm absent a preliminary injunction.

A.      **Individuals Suffer Irreparable Injury When They Are Unlawfully Deprived of SNAP Benefits.**

Defendants give short shrift to Plaintiffs' arguments regarding irreparable injury by blanketly asserting that the individual Plaintiffs, Mr. Smith and Ms. Tann, do not have standing. Opp. Br. at 53.  Yet Plaintiffs have sustained concrete injuries, and Defendants tacitly concede that those injuries are irreparable.

Defendants argue that it is "necessarily speculative as to whether the individual Plaintiffs will continue to be unemployed."  *Id.* at 54.  But it is Defendants, not Plaintiffs, that are engaging in speculation.  Plaintiffs are not currently employed, have attempted to find employment, and have been denied employment.  *See* Smith Decl. ¶¶6, 9-19; Tann Decl. ¶¶5, 7-20.  Therefore on the record before the Court, Plaintiffs will lose their SNAP benefits upon implementation of the Final Rule and the passing of the three months' time limitation.  Defendants raise entirely speculative future events to question Plaintiffs' risk of harm.  Because the record demonstrates that Plaintiffs have been unable to find jobs, Defendants have no basis for asserting that they may be able to retain their benefits by working.  Defendants also have no support for their assertion that Plaintiffs might qualify for a medical exemption, given that the District has never issued such an exemption or specified the parameters necessary to receive one.

1.      **Defendants Concede That Foregoing Food Constitutes Irreparable Harm.**

The fundamental harm that Plaintiffs Smith and Tann will incur, if the new rule goes into effect, is being forced to forego food, which constitutes "clearly irreparable" harm. *See* Pl. Br. at 36-39.  Defendants tacitly concede that foregoing food is irreparable harm but assert that Plaintiffs rely on a decision of this Court (*Garnett v. Zeilinger*) limited to the class action context.  *See* Opp. Br. at 56.  *Garnett* held that "foregoing food or other necessities" is a harm that is "clearly irreparable" as to individual declarants—without regard to the class.  313 F. Supp. 3d 147, 157

(D.D.C. 2018).  That holding is not limited to class actions.  *Id.*  Because Defendants do not dispute

that foregoing food constitutes irreparable harm, Defendants have conceded this argument.

> **2.      Defendants Concede That Individual Plaintiffs Will Be Unable to Avoid Loss of Their SNAP Benefits Through Participation in Extremely Limited Employment and Job Training Opportunities for ABAWDs in the District.**

Plaintiffs Smith and Tann face several challenges to obtaining and retaining employment

or job training opportunities.  *See* Pl. Br. at 37-39.  Their unique personal circumstances and the

structural impediments inherent in the District's labor market render it substantially unlikely that

they could obtain and maintain the employment or job training opportunities necessary to retain

their SNAP benefits in the absence of a District-wide waiver.  *See id.* at 38.  Defendants do not

even address this issue and therefore concede that Plaintiffs will be unable to obtain employment

or job training opportunities sufficient to retain their SNAP benefits.  *Kissi*, 664 F. Supp. 2d at

123.[18]

> **3.      The Irreparable Harm the Individual Plaintiffs Will Suffer Is Not Self-Inflicted.**

Rather than challenging Plaintiffs' arguments that foregoing food constitutes irreparable

harm, Defendants assert that the Individual Plaintiffs could simply apply for a medical exemption

under 7 U.S.C. § 2015(o)(3)(B).  This argument fails because: (1) Plaintiffs are not required to

---

[18] Defendants do assert in a cursory manner that it is "necessarily speculative as to whether the individual Plaintiffs will continue to be unemployed by July 1, 2020."  Opp. Br. at 54.  However, Defendants do not address the confluence of the several factors impeding Plaintiffs' ability to obtain employment—focusing solely on their medical diagnoses.  *See* Pl. Br. at 18-21.  Therefore, this argument "hardly warrants serious attention."  *See Mason v. Geithner*, 811 F. Supp. 128, 190 (D.D.C. 2011) ("[C]ourts need not resolve arguments raised in a cursory manner and with only the most bare-bones arguments in support . . . . Because Gaines has failed to respond to the arguments raised by Secretary . . . the Court shall, in an exercise of its discretion, treat those arguments as conceded.")  Moreover, Defendants' assertion is itself speculative and controverted by the only evidence in the record—Ms. Tann is unemployed, and Mr. Smith has not been consistently employed since 2014 and his circumstances have not changed.  Tann. Decl. ¶5; Smith Decl. ¶9.

apply for, and be denied, a medical exemption to establish irreparable harm, and (2) Defendants point to no evidence in the record that would indicate Plaintiffs qualify for a medical exemption.

Defendants contend, without support, that "Plaintiffs are likely excepted from the ABAWD work requirements" by way of an as-yet unused medical exemption. Opp. Br. at 54.[19]  According to Defendants, if Plaintiffs Smith and Tann do not apply for a medical exemption "their loss of SNAP benefits will not satisfy the irreparable harm requirement because the harm complained of would be self-inflicted." Opp. Br. at 56 (citing 11A C, Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1 (3d ed)).  Defendants' reliance upon generic treatise principles is misplaced—the issue here is not self-inflicted harm.

The Tenth Circuit's discussion of the "self-inflicted harm" doctrine in *Fish v. Kobach* is instructive.  *See* 840 F.3d 710, 753-54 (10th Cir. 2016).  *Fish* concerned a motion to enjoin the State of Kansas's implementation of a new statutory requirement affecting voting rights.  Kansas argued that the movants' harm was self-inflicted because they could have complied with the statute but simply chose not to do so.  The Court rejected the argument, noting that in general, "a finding of self-inflicted harm results from either misconduct or . . . entering a freely negotiated contractual arrangement, not from a failure to comply with an allegedly unlawful regime." *Id*. at 753.

As in *Fish*, the doctrine of self-inflicted harm is inapplicable to this case.  Plaintiffs Smith and Tann are currently covered by the District-wide waiver of the ABAWD work requirements.  If the new rule goes into effect and the District is unable to renew its waiver, Plaintiffs Smith and Tann will be subject to the ABAWD time limits and imminently face the loss of SNAP benefits.  This is sufficient to establish a likelihood of irreparable harm. Their failure to apply for a medical

---

[19] The District has never had a medical exemption process because a waiver has been in place from the inception of the statutory time limits.

exemption does not support a finding that their harm is "self-inflicted"—it arises neither from misconduct or a freely negotiated arrangement. Indeed, "the need to take such affirmative steps to avoid the risk of harm"—as Defendants claim Plaintiffs would be required to do here—is itself a cognizable injury. *See Meese v. Keene*, 481 U.S. 465, 475 (1987).[20]

Moreover, Defendants point to no evidence in the record that supports the claim that Plaintiffs Smith and Tann are "likely excepted from the ABAWD work requirements." Opp. Br. at 54. The evidence in the record does not suggest that either of the individual Plaintiffs' medical conditions, standing alone, prevent them from working. Nor do Plaintiffs allege that they are medically "unfit" for employment. *See* 7 C.F.R. § 273.24(c)(2)(iii). Instead, Plaintiffs allege that they are substantially unlikely to obtain employment for several reasons.

Mr. Smith cites his mobility issues as a cause for his inability to obtain work *in construction*. Smith Decl. ¶12. However, he cites both interpersonal conflicts caused by his mental health conditions *and* lack of a driver's license and reliance on public transportation for his inability to obtain employment generally. Smith ¶¶13, 15-17. The record demonstrates that Mr. Smith's inability to sustain employment is caused by a constellation of factors, which in combination preclude him from an already limited pool of employment opportunities in the District. Nowhere in the record does Mr. Smith allege that his physical and mental impairments, standing alone, render him medically "unfit for employment." Opp. Br. at 55.

---

[20] Because Plaintiffs have shown a likelihood that they will suffer irreparable harm, they have also met the lesser burden of showing that they have Article III standing. *See E.B. v. United States Dep't of State*, 2019 U.S. Dist. LEXIS 191165, at *9 (D.D.C. Nov. 4, 2019) (holding that plaintiffs had shown sufficient injury to establish standing, but had fallen short of showing irreparable harm). Moreover, Plaintiffs have plausibly alleged that USDA's new rule resulted from an improper rulemaking process, and standing to assert a procedural right arises at the time of the improper rulemaking process, for the "claim can never get riper." *Wyoming Outdoor Council v. United States Forest Service*, 165 F.3d 43, 51 (D.C. Cir. 1999) (citation omitted).

Similarly, Ms. Tann states that, despite working with a temporary placement agency, she has been unable to retain employment because her anxiety and depression "sometimes interfere" with her motivation and ability to focus. Tann. Decl. ¶11. Moreover, she too is reliant on public transportation and has a criminal history and court-ordered appointments that further impede her ability to obtain employment. Tann Decl. ¶12-19. Nowhere in the record does Ms. Tann allege that her mental health conditions, standing alone, render her medically "unfit for employment." Ms. Tann's anxiety and depression are just two of many factors that make it substantially unlikely that Ms. Tann would be able to satisfy the ABAWD work requirements.

Defendants do not address the confluence of factors cited by Plaintiffs Smith and Tann, instead focusing only on their "physical and mental impairments." Incredibly, Defendants argue that the mere fact of their *diagnoses* means that they likely qualify for a medical exemption on grounds that they are "unfit for employment." This suggestion overlooks the millions of working individuals with diagnosed physical and mental impairments. The proposition that a medical diagnosis *alone* renders an individual unfit for work would render the employment-related provisions of the Americans with Disabilities Act entirely irrelevant. *See* 42 U.S.C. § 12112(a); *see also Stamm v. New York City Transit Auth.*, 2011 U.S. Dist. LEXIS 36195, *59 (E.D.N.Y. Mar. 30, 2011) (recognizing that even if an impairment prevents an individual from performing certain jobs, it, an impairment alone will not *necessarily* "substantially limit the [individual's] ability to perform the major life activity of working.").

Finally, Defendants appear to suggest that obtaining a medical exemption is as simple as obtaining a statement from a medical professional. *See* Opp. Br. at 55. There is no reason to believe that any system to determine a beneficiary's "fitness" for employment would be so straightforward. Defendants' claim is particularly suspect where, as here, the District has never

issued a medical exemption (and accordingly has never had to evaluate, or establish a process for evaluating, medical exemption applications).[21]

Defendants have proffered a red-herring argument by asserting that Plaintiffs may avoid irreparable harm by applying for a medical exemption.  Plaintiffs Smith and Tann have sustained their burden to establish that in the absence of an injunction, it is likely that they will suffer the recognized irreparable harm of having to forego food.

> **B.      Bread For The City Will Suffer Irreparable Harm Resulting from the Diversion of Its Resources Away from Provision of Holistic Services and Legislative Advocacy.**

Organizational Plaintiff Bread for the City ("Bread") will also suffer irreparable harm if the new rule goes into effect on April 1, 2020.  To meet the increased demand for its food assistance programs that will result from implementation of the new rule, Bread will be forced to divert resources away from its other social services programs as well as its legislative advocacy and community organizing functions.  *See* Pl. Br. at 40-42.  Thus, implementation of the new rule will "perceptibly impair" Bread's programs and "conflict with [Bread's] mission."  *See Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 177 (D.D.C. 2017) (citations omitted).

Defendants ignore the full scope of irreparable harm faced by Bread, erroneously asserting that Bread limits its claims to harm from "inflate[d] demand for its nutritional support program," alleging that this harm is "no more than an abstract injury to its interests."  Opp. Br. at 56-57 (citing *Cigar Ass'n of America v. FDA*, 323 F.R.D. 54, 62-63 (D.D.C. 2017).  Unlike the intervening

---

[21] The District's webpage for SNAP benefits does not yet include any information or forms regarding the medical exemption, and the informational flyers available state only that those with "a medical or physical barrier to employment" may be exempt from the ABAWD work requirements and that more details will be available in early 2020.  *See* https://dhs.dc.gov/sites/default/files/dc/sites/dhs/service_content/attachments/FAQ%20SNAP%20customers%20subject%20to%20the%20ABAWD%20time-limits.pdf (last visited February 16, 2020).

organizations in *Cigar Ass'n*—which alleged only an increased need for their existing services—Bread has demonstrated *both* an inflated need for its existing food assistance program *and* a forced diversion of resources away from and impairment to its other social service and legislative advocacy functions (in order to meet that increased need).   *See* Pl. Br. at 40-42.   By failing to address these resource-diversion harms, Defendants tacitly concede that they constitute irreparable harm to Bread, consistent with the decisions of numerous courts.   *See, e.g., Open Cmtys.*, 286 F. Supp. 3d at 178; *Ind. State Conf. of the NAACP v. Lawson*, 326 F. Supp. 3d 646, 662 (S.D. Ind. 2018).

## III.   THE BALANCE OF THE EQUITIES WEIGHS IN PLAINTIFFS' FAVOR AND INJUNCTIVE RELIEF WILL NOT SUBSTANTIALLY HARM DEFENDANTS' INTERESTS.

If USDA implements the new rule, the Individual Plaintiffs will lose access to food, and Bread will be forced to divert its scarce resources away from its holistic array of services to meet the increased need for its food assistance programs.   By contrast, any harm Defendants are likely to suffer is woefully insufficient to tip the balance of equities in their favor.

Defendants contend that they will be harmed in two ways if a preliminary injunction is granted.   *First*, they argue that they will suffer irreparable injury if enjoined from effectuating statutes enacted by Congress.   Opp. Br. at 63 (relying on *Maryland v. King*, 567 U.S. 1301 (2012)) (holding in a criminal appeal that the government would suffer a form of irreparable injury if a stay of judgment were granted where State had established a likelihood that the underlying issues would be resolved in its favor upon disposition of the State's petition for a writ of certiorari). This argument effectively merges into consideration of the merits.   If the Court holds that Plaintiffs are likely to succeed on the merits of their claims—*i.e.* that the new rule is unlawful, arbitrary and capricious, and procedurally invalid—Defendants would suffer no legitimate harm from the inability to continue implementing the statute through the new rule.   Plaintiffs' risk of harm from

foregoing food and diversion of organizational resources outweighs any injury caused by simply requiring USDA to follow applicable statutory and procedural requirements. *See Briggs v. Bremby*, 2012 U.S. Dist. LEXIS 172018, *58 (D. Conn. Dec. 4, 2012).

*Second*, Defendants contend that they will be harmed because they would be required to continue disbursing taxpayer dollars to provide SNAP benefits to ABAWDs in areas where the new rule would terminate waivers. Defendants cite no authority to support the assertion that they suffer cognizable harm from continuing to fund ordinary agency functions during the period that a preliminary injunction simply preserves the status quo. Furthermore, this argument also effectively merges into the merits, for if the new rule is vacated, continued funding under the existing rule is a routine and legitimate obligation of the government. *See id*.

Accordingly, the Court should hold that the balance of the equities weighs in favor of granting a preliminary injunction.

## IV. GRANTING A PRELIMINARY INJUNCTION WOULD ADVANCE THE PUBLIC INTEREST.

The injunctive relief requested by Plaintiffs also advances the public interest. Congress articulated the pertinent public interest here, stating that providing SNAP benefits is necessary "in order to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households" and to curb "hunger and malnutrition." 7 U.S.C. § 2011. If it goes into effect, the new rule will very likely cause Plaintiffs Tann and Smith to forego food, thereby making them experience hunger—a result counter to express congressional intent and the public interest. By contrast, the preliminary injunction will prevent Plaintiffs Smith and Tann, and (by USDA's estimation) hundreds of thousands of other ABAWDs, from losing their SNAP benefits during the pendency of this action. The public interest

weighs in favor of maintaining the status quo and enjoining the unlawful deprivation of basic subsistence benefits.  *See, e.g., Lopez v. Heckler*, 713 F.2d 1432, 1437-38 (9th Cir. 1983).

This is true even if, as Defendants assert, the government interest and the public interest were considered to be one and the same. *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) ("the public interest is served when administrative agencies comply with their obligations under the [APA]") (citation omitted). When the government interest and the public interest are merged, a Court will identify all of the public interests—including those running counter to the government agency's stated position—and will consider the totality of those interests to determine whether they weigh for or against granting a preliminary injunction.  *See, e.g., Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511-12 (D.C. Cir. 2016) (noting that in addition to the government's stated interest in limiting fraud, the public also had an interest in the exercise of free speech rights and that weighty public interest was properly imputed to the government and weighed in favor of a preliminary injunction.)  In this case, the Court should impute to Defendants the public's interest in ensuring that individuals are not unlawfully deprived of basic subsistence benefits and hold that both Defendants' interest and the public interest (and specifically the public interest in curbing hunger) weigh heavily in favor of granting the motion for a preliminary injunction.

Finally, "[t]here is generally no public interest in the perpetuation of unlawful agency action."  *Open Cmtys.*, 286 F. Supp. 3d at 179 (quoting *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).  The public interest is "in having governmental agencies abide by the federal laws—such as the APA." *Id.* (internal citations and quotations omitted).  A preliminary injunction in this case would protect that substantial public interest.

**CONCLUSION**

The Court should issue a preliminary injunction staying the effective date of the new rule, thereby prohibiting USDA from administering, determining waiver applications under, or taking any other action under, the new rule pending final judgment in this case.

Respectfully Submitted,

<table>
<tr>
<td>

    /s/ *Chinh Q. Le*     
Chinh Q. Le (D.C. Bar #1007037)
Jennifer F. Mezey (D.C. Bar #462724)*
Nicole Dooley (D.C. Bar #1601371)*
LEGAL AID SOCIETY OF THE
DISTRICT OF COLUMBIA
1331 H Street, N.W., #350
Washington, DC 20005
Phone: (202) 661-5979
Fax: (202) 727-2132

</td>
<td>

    /s/ *Daniel G. Jarcho*     
Daniel G. Jarcho (D.C. Bar #391837)
Kelley C. Barnaby (D.C. Bar #998757)
Raechel J. Bimmerle*
Jean E. Richmann*
Hilla Shimshoni (D.C. Bar #1033015)*
Kaelyne Y. Wietelman*
ALSTON & BIRD LLP
950 F Street, N.W.
Washington, DC  20004
Phone: (202) 239-3300
Fax: (202) 239-3333

</td>
</tr>
</table>

*Attorneys for Plaintiffs Bread for the City, Damon Smith and Geneva Tann*

25