UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT OF COLUMBIA, STATE OF NEW YORK, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF OREGON, COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, and CITY OF NEW YORK, <br><br>　　　　　Plaintiffs, <br><br>　v. <br><br>U.S. DEPARTMENT OF AGRICULTURE; GEORGE ERVIN PERDUE III, in his official capacity as Secretary of the U.S. Department of Agriculture, and UNITED STATES OF AMERICA, <br><br>　　　Defendants. | Civ. Action No. 1:20-cv-00119-BAH |

**DECLARATION OF CATHERINE BUHRIG IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, Catherine Buhrig, declare and state as follows:

　　1.　　I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

1

2.      I am the Director of the Bureau of Policy in the Office of Income Maintenance (OIM) at the Pennsylvania Department of Human Services (PA DHS). I have held this position since December 2014. I have worked for PA DHS for 17 years and have held numerous positions within human services. I hold a B.S. in Psychology from the University of Pittsburgh, a Master's in Organization Development and Leadership with a concentration in public organizations and a Master's in Public Administration from Shippensburg University. As policy director, I am responsible for monitoring, maintaining and analyzing program changes, legislative bill analysis at both the state and federal level. I am also responsible for the administration, implementation, oversight, compliance, and reporting of eligibility policy for Medicaid, state-funded Medical Assistance, the Supplemental Nutrition Assistance Program (SNAP), the Temporary Assistance for Needy Families (TANF) program, and the Low-Income Energy Assistance Program (LIHEAP) for the Commonwealth of Pennsylvania.

3.      I am aware that the federal government in December 2019 issued a final rule "Supplemental Nutrition Assistance Program: Requirements for Able-Bodied Adults Without Dependents" 84 Fed. Reg. 66,782 (Dec. 5, 2019) (Final Rule). I have reviewed the Final Rule and am aware of its direct implications on administering SNAP, formerly known as food stamps, within Pennsylvania. I understand that this lawsuit challenges the Final Rule. I previously submitted a declaration in support of the State Plaintiffs' motion for preliminary injunction.

4.      After State Plaintiffs filed their motion for preliminary injunction, the novel coronavirus which causes the disease known as COVID-19 began spreading throughout Pennsylvania. On March 6, 2020, Pennsylvania Governor Tom Wolf declared a public health emergency. To mitigate the spread of COVID-19, businesses were forced to close their doors. As a result of the economic fallout, many Pennsylvania residents lost their jobs.

5.      The current public health crisis demonstrates the untenability of the restrictions on ABAWD waiver requests that would be imposed under the Final Rule. The new ABAWD waiver criteria in the Final Rule cripples States' ability to respond to sudden economic downturns and emergencies such as the one caused by COVID-19. The current health crisis has underscored the urgent need for states to be nimble and flexible in their ability to respond to this and other crises. Current ABAWD waiver requirements do exactly that. States will be hamstrung without this flexibility, and SNAP recipients and state economies will suffer.

6.      The Final Rule eliminates a state's ability to justify ABAWD waiver requests with a U.S. Department of Labor determination that the state qualifies for extended unemployment benefits. Under the Final rule, Pennsylvania must wait for the release of three full months of local area unemployment data reflecting the effects of the crisis before qualifying for a waiver, thereby delaying the ability of some ABAWDs to receive benefits during the emergency. The COVID-19 crisis illustrates that this change would unduly delay states' ability to receive an ABAWD waiver during a widespread regional or national emergency like the COVID-19 pandemic. Under the Final rule, Pennsylvania must wait for the release of three full months of local-area unemployment data reflecting the effects of the crisis before qualifying for a waiver, thereby delaying the ability of some ABAWDs to receive benefits during the emergency.

7. The Final Rule eliminates unlimited carryover of discretionary exemptions, hampering the state's ability to respond to statewide and local emergencies. The COVID-19 crisis is a cogent example of why states need to maintain their ability to carryover all discretionary ABAWD exemptions. Limiting carryover leaves states unable to adequately protect ABAWDs subject to the time limit before enough time passes to qualify for a waiver. The virus remains, and with a threatened second wave later this year, the Final Rule would undermine Pennsylvania's ability to grant discretionary exemptions from the ABAWD time limit and continue food assistance pending a waiver. Together these rules would limit access to food at the height of an emergency when they are most needed.

8. Using Labor Market Areas ("LMAs") as the geographic basis of a waiver request, as the Final Rule requires, is likewise unreasonable. Each state with localities within the LMA makes independent decisions on when to reopen restaurants, businesses, schools, and parks. These decisions directly affect the local unemployment rate. Counties in Ohio, Maryland, Delaware and New Jersey, which are part of the same LMA as Pennsylvania, have designed their own narrowly tailored tracks for reopening. States are determining how and when to reopen portions of the economy in consideration of public health conditions in local areas and not based on the LMA as a whole. The nature and extent of each state's health and economic crisis is unique – and the trajectory varies, even by county. Pennsylvania's ability to receive an ABAWD waiver should not depend on the health and economic situation in surrounding states within the LMA.

9. Job availability in counties within the LMA that are 50 to 70 miles from the state may improve. But Pennsylvania residents subject to ABAWD time limits may not have meaningful access to these jobs. Before the COVID-19 crisis, many ABAWDs had limited access to the far reaches of the LMA because of limited transportation. Many ABAWDs do not own a car and many LMAs do not have ready access via public transportation. To reduce the risk of exposure to COVID-19, public transportation has been further limited.

10. Pennsylvania must focus on the well-being of its own residents in determining when to reopen the economy and how to address unemployment in the state. Relying on the LMA as the geographic basis for the waiver inappropriately requires the state to take into account decisions to reopen businesses in surrounding states – in places many miles away where the COVID-19 infection rates may be lower. An ABAWD waiver under the Final Rule's new criteria would be constrained to reflect the overall unemployment rate of all counties. This broad-brush approach ignores the fact that some portions of the LMA may have had permission to returned to "normal" economic activity before others, triggering lower unemployment rates. Meanwhile states like Pennsylvania are still seeing high unemployment rates as state officials prioritize preventing the spread of COVID-19. Decisions made in other jurisdictions, without consideration of the status of COVID cases within Pennsylvania, could nevertheless prevent the state from providing its residents with much-needed food assistance during a public health crisis.

11. In the face of the Final Rule's draconian restrictions that would, even in these dire times, deny or delay a waiver for Pennsylvania, the food banks are drained, local feeding centers are the norm, and supermarket shelves are just beginning to return to normal stock. No one can reasonably dispute that the nation is in the midst of an unprecedented crisis. Without the ability to qualify for a waiver, Pennsylvania would have limited means of providing much needed food

assistance to ABAWDs. Many ABAWDS cannot find work in a flailing economy, are unable to look for work while maintaining appropriate social distancing or are unable to participate in online training services because of the digital divide.

12. On May 10, 2020, Pennsylvania qualified for a statewide waiver under the current rule's extended unemployment benefits criterion. However, the Final Rule eliminates this criterion as a basis for a waiver.

13. If the Final Rule becomes effective, Pennsylvania would be left with limited options, if any, to seek a waiver of the ABAWD time limits. While some businesses are open, capacity is limited and not all employees have yet been called back to work. Many may never called back. The remaining waiver options will take significantly more time for federal approval at a time when low-income Pennsylvanians are most vulnerable.

14. The Final Rule will retroactively strip Pennsylvania of almost 135,000 previously earned discretionary exemptions that could otherwise be used to maintain food assistance to ABAWDs while awaiting waiver approval. Low-income families have been hit especially hard by the pandemic, and many are at high risk as they are disabled, elderly, or have underlying health conditions that make them more vulnerable to being infected or death from COVID-19. SNAP benefits are crucial for their ability to put food on the table to keep their families healthy and better positioned to combat the spread of the coronavirus.

I declare under penalty of perjury that the forgoing is true and correct and of my own personal knowledge.

Executed on June 19, 2020 in Harrisburg, Pennsylvania.

*[signature]*
Catherine Buhrig
Director, Bureau of Policy
Office of Income Maintenance
Pennsylvania Department of Human Services

4