UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT OF COLUMBIA, STATE OF NEW YORK, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF OREGON, COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, and CITY OF NEW YORK,<br><br>          Plaintiffs,<br><br>  v.<br><br>U.S. DEPARTMENT OF AGRICULTURE; GEORGE ERVIN PERDUE III, in his official capacity as Secretary of the U.S. Department of Agriculture, and UNITED STATES OF AMERICA,<br><br>          Defendants. | Civ. Action No. 1:20-cv-00119-BAH |

### DECLARATION OF ALEXIS CARMEN FERNÁNDEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, Alexis Carmen Fernández, declare and state as follows:

    1.     I am over the age of eighteen (18) years, competent to testify to the matters contained herein, and testify based on my personal knowledge and information.

1

2.      I am Chief of the CalFresh & Nutrition Branch within the California Department of Social Services (CDSS). I have held this position since July 2019, first as Acting Chief and now in my appointed position. Prior to the position I hold now, I served as Chief of the CalFresh Policy Bureau, previously known as the CalFresh Policy Section, within the CalFresh and Nutrition Branch at CDSS, from June 2016 to July 2019. Before joining state service, I was the Policy Director at the First 5 Association of California and Director of Legislation at California Food Policy Advocates. I have a Master of Social Welfare, with a specialization in Management and Planning, from the University of California, Berkeley.

3.      I am aware that the federal government in December 2019 issued a final rule "Supplemental Nutrition Assistance Program: Requirements for Able-Bodied Adults Without Dependents" 84 Fed. Reg. 66,782 (Dec. 5, 2019) (the "Final Rule"). I have reviewed the Final Rule and am aware of its direct implications on the administration of the Supplemental Nutrition Assistance Program (SNAP), known in California as CalFresh. I understand that this lawsuit challenges the Final Rule. I previously submitted a declaration in support of the State Plaintiffs' motion for preliminary injunction.

4.      In the months since the State Plaintiffs filed their motion for preliminary injunction, the novel coronavirus that causes the disease known as COVID-19 has impacted and continues to impact California's economy. On March 4, 2020, the Governor of the State of California, Gavin Newsom, proclaimed a state of emergency. On March 19, 2020, the State Public Health Officer issued a statewide stay-at-home order to disrupt the spread of the coronavirus. Many California businesses have limited their hours or methods of operation or closed their doors altogether. From March to June 2020, the California Employment Development Department reported processing nearly 5.5 million Unemployment Insurance claims. While California has begun moving through a four-stage reopening framework, it is unclear when the stay-at-home order will be lifted in full. It is also unclear whether California will experience a resurgence of the virus, which might require further restrictions.

5.      Many of those experiencing increased financial hardship began applying for CalFresh benefits. In February 2020, before the economic impacts of COVID-19 had been felt in earnest, 4,063,062 California households received CalFresh and 160,968 new applications for CalFresh were submitted. In March and April 2020, 608,306 new SNAP applications were submitted and by the end of April 2020, CalFresh participation had grown to 4,487,411 recipient households. While household participation numbers for May 2020 are not yet available, another 258,146 applications were submitted. This trend represents a complete reversal of prior trends: ahead of the COVID-19 pandemic, CalFresh participation, like SNAP participation nationwide, was trending downward due to a strong economic outlook.

6.      As explained in my previous declaration, CalFresh Employment & Training (CalFresh E&T) is California's version of the SNAP Employment & Training program and provides important job resources to those eligible for CalFresh. At the time of that declaration, CalFresh E&T did not have the capacity to provide services to all Able-Bodied Adults Without Dependents (ABAWDs) that would need to engage in qualifying work activities as a result of the Final Rule and the Final Rule did nothing to supplement these resources. The economic impact of the COVID-19 pandemic has further decreased this capacity as most CalFresh E&T counties

have limited their operations to essential services only and many providers have also limited their operations and are unable to provide CalFresh E&T services in-person. While virtual and home-based CalFresh E&T services may be provided in the future, many counties and providers have not yet been able to reconfigure their service model. This change will require time, resources, and technological capacity, and would have significantly strained CDSS's resources even before the COVID-19 pandemic.

7. There has been a limited increase in demand for some service industry jobs, such as grocery and restaurant delivery jobs, during the COVID-19 pandemic. Gig economy jobs do not reliably provide sufficient hours to meet the ABAWD time limit work requirements; they may also require other resources that may not be available to the ABAWD, like a reliable vehicle. Many ABAWDs who struggled to find work before the COVID-19 pandemic continue to struggle; many now find it even more difficult to find work. There are now more limited options for employment and far greater competition for the jobs that do exist. Lastly, in light of the COVID-19 pandemic, some people are unable to return to the workforce without jeopardizing their own health and safety or that of their families.

8. In response to the economic hardships created by the COVID-19 pandemic, the Families First Coronavirus Response Act (Public Law 116-127) was passed by Congress and signed by the President in March 2020. Under this Act, the ABAWD time limit rule is suspended for the length of the federal public health emergency. It is unclear when this suspension will end; thus, while a waiver is not currently necessary, one may be necessary in the near future.

9. On June 2, 2020, California submitted a new request to the U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS) to waive the ABAWD time limit statewide beginning July 1, 2020 and continuing until June 30, 2021. The waiver request is based on California qualifying for Extended Benefits under the U.S. Department of Labor's Unemployment Insurance program. Under the current ABAWD regulations, this is an approved form of evidence to support a state's claim of insufficient jobs. Under the Final Rule, California would not be able to request a statewide waiver and statewide approval of extended unemployment benefits would likely be deemed insufficient to demonstrate the need for a waiver for any of the Labor Market Areas (LMAs) within the state.

10. The current public health crisis has demonstrated the untenability of the restrictions on ABAWD waiver requests that would be imposed under the Final Rule. The new ABAWD criteria contained in the Final Rule will not allow States to respond to sudden economic downturns such as the one caused by COVID-19. The current COVID-19 pandemic has underscored the need for states to have flexibility when it comes to the administration of SNAP.

11. The economic impacts of the COVID-19 pandemic on local jurisdictions have demonstrated that using LMAs as the only permissible geographic basis for waiver requests does not sufficiently address local needs. LMAs can include more than one county and/or multiple cities. However, under California's four-stage reopening framework, different counties may move through the reopening process on different timelines. Additionally, local health officers may impose restrictions that go beyond restrictions imposed by the State. Thus, there may be significant differences in reopening across jurisdictions that are combined into a single LMA.

For this and other reasons, a portion of an LMA may experience a slower economic recovery than other portions of that same LMA. Yet, under the Final Rule, the part of the LMA suffering more economically would be masked by unemployment data from the rest of the LMA.

12. The Final Rule requires an LMA have a 12-month average unemployment rate of at least 10% or a 24-month average unemployment rate of at least 6% and 20% higher than the national average for that LMA to qualify for a waiver of the ABAWD rule. These thresholds are so high, and the LMAs are so rigid, that the Final Rule, were it in effect today, would not allow for waivers in some California LMAs with very high rates of unemployment for the month of April 2020, due to the fact that those LMAs had low unemployment rates for the preceding two years. The anticipated high unemployment rates of 2020 may not even be enough to raise the average 12- or 24-month unemployment rate to the necessary threshold under the Final Rule. Further, the Final Rule's provision for obtaining a waiver without meeting these thresholds in "exceptional circumstances" is vague and would unnecessarily delay response to an emergency (7 CFR 273.24(f)(3)). The only example of how such an exception would function describes "data from the BLS or a BLS-cooperating agency that shows an area has a most recent three-month average unemployment rate over 10 percent." As of the date of this declaration, the Bureau of Labor Statistics (BLS) only reflects unemployment data as recent as April 2020, the first month in which areas had unemployment rates over 10%. This seems to indicate that even under this "exceptional circumstances" standard, a waiver would not be approved until not one, but two more months of BLS data are published.

13. In addition to vastly restricting California's ability to seek a waiver during the current crisis or a future crisis, the Final Rule will eliminate California's carryover of discretionary exemptions, which could be used to mitigate some of the harm of the ABAWD time limit during such crises. In October 2020, 853,947 of California's discretionary exemptions will be eliminated as a result of the non-enjoined portion of the Final Rule. These exemptions are not being used currently due to the congressional suspension of the ABAWD time limit under Public Law 116-127. If California's waiver request is granted, then the exemptions will not be used again for at least a year. When California's economy begins to recover and the ABAWD time limit is implemented in certain counties, there will be no discretionary exemptions to help those households that are slower to recover.

14. The administrative challenges in implementing this Final Rule have only increased as a result of the COVID-19 pandemic. Many CDSS and county employees have had to take a leave of absence or time off to care for themselves or other family members. Staff capacity will likely continue to be limited as a result of budget cuts, discussed further below. This limited capacity must be dedicated to general recovery efforts, including taking up projects that were delayed by the response to the COVID-19 pandemic, and to ensuring that CalFresh is accessible to all. Dedicating staff time to implementation of a work rule at this point in time would divert resources away from those other critical responsibilities, at a time when such resources cannot be spared.

15. As discussed in my previous declaration, implementation of the Final Rule would require automation changes in California's three eligibility information technology (IT) systems. The COVID-19 pandemic has led to a number of urgent, high-priority automation projects. As a result, non-COVID-19 automation projects have been delayed. This means that automation for

this Final Rule will either be significantly delayed or will further delay other high priority non-COVID-19 projects. It could be well over a year before any automation for the Final Rule could begin. It is worth noting that California will be migrating to a single eligibility IT system in the next few years, so any automation work done in the retiring systems will only be of use for a short time.

16. At the time my prior declaration was filed with the court, California was projecting a $5.6 billion budget surplus. On May 14, 2020, as a result of the COVID-19 pandemic, the State projected a budget deficit of $54.3 billion. The Final Rule would further harm the economy and be costly to the State. As I explained in my prior declaration, it is estimated by USDA that one dollar in SNAP benefits spent is $1.54 added to the Gross Domestic Product (GDP). Therefore, any reduction in CalFresh eligibility has a negative impact on an already hard-hit economy. Similarly, the Final Rule would increase state and local administrative costs during a time when public entities are experiencing significant budget cuts. Jointly, the State and counties pay 50% of the administrative costs of CalFresh, with the FNS matching the other 50%. Therefore, the implementation of the Final Rule will only add to the State's and counties' economic and fiscal hardship.

17. As Chief of the CalFresh and Nutrition Branch, I also oversee the administration of several major federal and state food distribution and food bank programs. As a result of the COVID-19 pandemic, California food banks are reporting unprecedented levels of need. In my previous declaration I explained that California's food banks do not have the capacity to serve as the sole-food provider for an individual who loses their eligibility for CalFresh. The COVID-19 pandemic has underscored that food banks cannot be relied upon to be the sole source of food for individuals who should be receiving SNAP. Instead, they must be able to support those individuals and households who are experiencing a crisis and are urgently in need of the food safety net.

18. Were this Final Rule to go into effect, California could be left with extremely limited options, if any, to seek a waiver of the ABAWD work requirements during an unprecedented crisis where it is even more difficult to find available jobs and individuals are being asked to stay home to protect their own health and the health of the community. Families with low-income have been hit especially hard by the pandemic, and CalFresh benefits are crucial for their ability to put food on the table to keep their families healthy and better positioned to combat the spread of the coronavirus.

I declare under penalty of perjury that the forgoing is true and correct and of my own personal knowledge.

Executed on June 22, 2020 in Sacramento, California.

ALEXIS CARMEN FERNÁNDEZ
Chief, CalFresh & Nutrition Branch
California Department of Social Services